In re Honorable Sharon KELLER, Presiding Judge of the Court of Criminal Appeals for the State of Texas.

No. 10–0001.

Special Court of Review Appointed by the Supreme Court.

Oct. 11, 2010.

Amended Judgment Oct. 15, 2010.

Order Nov. 8, 2010.

Special Court of Review consists of Presiding Chief Justice LIVINGSTON,* Justice ALCALA,** and Justice KREGER.***

**OPINION**

This Special Court of Review is assigned to resolve the appeal of the Order of Public Warning issued by the State Commission on Judicial Conduct (the Commission) against respondent, the Honorable Sharon Keller, Presiding Judge of the Court of Criminal Appeals for the State of Texas. *See* TEX. GOV'T CODE ANN. § 33.034(a), (c), (e) (Vernon Supp.2010). Judge Keller has filed a motion to dismiss the charging doc-

ument, asserting that the sanction issued by the Commission must be vacated as it is impermissible as a matter of law and void. The parties principally dispute whether the Texas Constitution's list of possible outcomes following a formal proceeding is illustrative instead of exhaustive, because a sanction is not listed as a possible consequence after a formal proceeding. We conclude that, under the Texas Constitution and Government Code, it is impermissible to assess sanctions following a formal proceeding by the Commission and, therefore, the sanction is erroneous as a matter of law. Accordingly, we vacate the Commission's Order and dismiss the charging document. Thus, our resolution of this motion is not an opinion on the underlying merits.

**Factual and Procedural History**

The Commission opened a case against Judge Keller. The case concerned complaints against her for her decision not to keep the clerk's office of the Court of Criminal Appeals to remain open past business hours to allow the entity acting as defense counsel for Michael Wayne Richard to file requests concerning the impending imposition of the death penalty against him. After an informal investigation, the Commission voted in February 2009 to pursue formal proceedings against Judge Keller. It sent Judge Keller a notice advising her that "formal proceedings [had] been initiated against her" pursuant to section 33.002 of the Government Code and Rule 10 of the Procedural Rules for the Removal or Retirement of Judges.[1] In

---

* The Honorable Terrie Livingston, Chief Justice, Court of Appeals, Second District of Texas at Fort Worth, presiding by appointment.

** The Honorable Elsa Alcala, Justice, Court of Appeals, First District of Texas at Houston, participating by appointment.

*** The Honorable Charles Kreger, Justice, Court of Appeals, Ninth District of Texas at Beaumont, participating by appointment.

1. *See* TEX. GOV'T CODE ANN. § 33.002(a) (Vernon 2004) (providing Commission has powers established under article 5, section 1–a, of Texas Constitution); TEX.R. REM'L/RET. JUDG. 10 (West 2010) (same).

June 2009, it sent her a first amended notice of formal hearing.

The Commission requested that the Chief Justice of the Texas Supreme Court appoint a Special Master to hear evidence. The Chief Justice appointed the Honorable David Berchelmann, Jr., Judge of the 37th Judicial District Court of Bexar County, Texas as the Special Master to conduct a hearing and to make a report to the Commission. After an evidentiary hearing, the Special Master made findings of fact in January 2010.

Though critical of Judge Keller's decision and actions concerning the complained-of conduct, the Special Master recommended that no formal action be taken against her. He found that Judge Keller's conduct "does not warrant removal from office, or even further reprimand beyond the public humiliation she has surely suffered."

The Special Master found that Richard's counsel "bears the bulk of fault for what occurred on September 25, 2007." He noted that Richard's counsel did not spend sufficient time preparing in advance for its constitutional challenge,[2] assigned a junior attorney to draft the papers, did not have the documents it intended to file with Court of Criminal Appeals ready in a timely manner, failed to pursue all possible ways to file the claim, relied on paralegals instead of lawyers to communicate with the Court of Criminal Appeals's staff, and gave the media false information that "embellished the computer problems it suffered and untruthfully told the media that it was ready to file at 5:20 but that Judge Keller had already closed the court house doors." In explaining why he believed that Judge Keller should not receive any

reprimand, the Special Master explained that she "did not *cause* [Richard's counsel] to be late in its filing, to forget the other available avenues, or to fail to have any of its experienced lawyers contact" the Texas Court of Criminal Appeals. According to the Special Master, Rule 9.2(a) of the Rules of Appellate Procedure could have been used by Richard's counsel to file the documents after the clerk's office closed. *See* Tex.R.App. P. 9.2(a) (explaining that "[a] document is filed in an appellate court by delivering it to . . . a justice or judge of that court who is willing to accept delivery"). The Special Master determined that Richard's counsel made no attempt to utilize Rule 9.2 to file any document with any judge of the Court of Criminal Appeals.

Though he found Richard's counsel largely at fault, the Special Master made findings critical of Judge Keller's conduct as "not exemplary of a public servant." He determined that "she should have been more open and helpful about the way in which [Richard's counsel] could present the lethal injection claim to the [Texas Court of Criminal Appeals]." He also criticized Judge Keller's failure to direct the communication from Richard's counsel to the Honorable Cheryl Johnson, the Texas Court of Criminal Appeals judge assigned to Richard's case. Additionally, he chastised as "highly questionable" Judge Keller's judgment in not keeping the clerk's office open past 5:00 p.m. to allow the late filing. He summarized his determination, finding that Judge Keller "did not violate any written or unwritten rules or laws." Furthermore, the Special Master concluded that, although Judge Keller "says that if she could do it all over again she would

---

**2.** Richard's counsel prepared the claim in response to the Supreme Court's grant of certiorari, announced earlier that day, in the case of *Baze v. Rees*, which challenged Kentucky's use of a lethal injection method identical to that used by this state. *See* 551 U.S. 1192, 128 S.Ct. 34, 168 L.Ed.2d 809 (2007) (granting writ of certiorari).

not change any of her actions, this cannot be true." He explained that "[a]ny reasonable person, having gone through this ordeal, surely would realize that open communication, particularly during the hectic few hours before an execution, would benefit the interests of justice." Both parties objected to the Special Master's findings.

In June 2010, the Commission considered the record of the formal proceedings. The record included the Special Master's findings of fact as well as the transcript of the testimony and exhibits presented at the evidentiary hearing held before the Special Master. No additional evidence was presented to the Commission at its hearing.

The Commission disregarded the conclusions of the Special Master and voted to issue Judge Keller a public warning as a sanction against her. The public warning was for violations of article 5, section 1–a(6)(A) of the Texas Constitution[3] and Canon 3(B)(8) of the Texas Code of Judicial Conduct.[4] Unlike the Special Master's findings of fact, the Commission entered findings of fact that blamed the events solely on Judge Keller, without criticizing Richard's counsel. Other than the findings concerning Richard's counsel, many of the other findings by the Commission corresponded to the Special Master's findings. In its Order, the Commission described its' review as conducted "[p]ursuant to Rule 10(m) of the Procedural Rules for the Removal or Retirement of Judges," *See* TEX.R. REM'L/RET. JUDG. 10(m).

The Commission concluded that Judge Keller violated the "binding obligations" in article 5, section 1–a(6)(A) of the Texas Constitution, section 33.001(b) of the Texas Government Code,[5] and Canon 3(B)(8) of the Texas Code of Judicial Conduct. The Commission found Judge Keller's violations to include: (1) willful or persistent conduct that is clearly inconsistent with the proper performance of her duties as a judge by (a) failing to follow execution day procedures and failing to require or assure compliance by staff with respect to Richard's right to be heard, and (b) not according Richard access to open courts or the right to be heard according to law; and (2) willful or persistent conduct that casts public discredit on the judiciary or the administration of justice for the same reasons stated in (a) and (b) above.

The Commission made two conclusions regarding "aspirational goals" in the Texas Code of Judicial Conduct. The first conclusion was that Judge Keller's failure to cooperate with other judges and court officials in the administration of court business violated Canon 3(C)(1).[6] The second conclusion was that, contrary to Canon 3(C)(2), she failed to require court staff under her direction and control to observe the standards of fidelity and diligence that

---

**3.** A judge may be disciplined for willful or persistent conduct that is clearly inconsistent with the proper performance of the judge's duties or that casts public discredit on the judiciary. TEX. CONST. art. V, § 1–a(6)(A).

**4.** A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. Tex.Code Jud. Conduct, Canon 3(B)(8), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. B (Vernon 2005). "A judge shall require compliance with this subsection by court personnel subject to the judge's direction and control." *Id.*

**5.** Willful or persistent conduct that violates the Texas Constitution includes a willful violation of a provision of the Texas Code of Judicial Conduct. TEX. GOV'T CODE ANN. § 33.001(b)(2) (Vernon Supp.2010).

**6.** "A judge ... should cooperate with other judges and court officials in the administration of court business." *See* TEX CODE JUD. CONDUCT, Canon 3(C)(1).

apply to herself.[7]

Judge Keller appealed. The Commission's Examiner, Seana Willing, also appeared dissatisfied with the Commission's decision; in her public statement to the *Texas Lawyer* newspaper, she criticized the decision for failing to comport with the Texas Constitution because a public warning cannot result from a formal proceeding. Mary Alice Robbins, *Bad Law?: Judicial Conduct Commission Examiner Questions Basis for Public Warning in* Keller *Case,* Texas Lawyer, July 28, 2010, at 1, 14. Chief Justice Wallace Jefferson of the Texas Supreme Court appointed this panel as the Special Court of Review, chosen by lot.[8] *See* TEX. GOV'T CODE ANN. § 33.034(a)-(c).

As required by the Government Code, the Commission filed a charging document on September 2, 2010, within fifteen days of the appointment of the Special Court of Review. *See id.* § 33.034(d). The charging document included a copy of the sanction issued as well as additional charges to be considered by the court of review. *See id.* The charging document before us differs from the earlier charging document that resulted in the Commission's decision. For example, the fifth charge, which concerns incompetence in performing duties, describes additional conduct that allegedly violates Canon 3(B)(8) of the Texas Code of Judicial Conduct. This specific allegation was not part of the charging document presented to the Commission when it reached its decision. The Commission now has requested this Special Court of

Review to conduct a trial de novo on its September 2, 2010 charging document. *See* TEX. GOV'T CODE ANN. § 33.034(d), (e)(2).

Judge Keller filed a written motion to dismiss. The Commission's Examiner now contends that the Commission's Order is consistent with the Texas Constitution, Government Code, and applicable Rules.

On September 20, 2010, within thirty days after the date on which the charging document was filed with the clerk, the Special Court of Review heard preliminary oral arguments at a public hearing on Judge Keller's motion to dismiss the charge. *See id.* § 33.034(e-1), (h). To allow the court of review sufficient time to consider the merits of the motion to dismiss, the parties agreed that there was good cause to grant a continuance, not to exceed sixty days. *See id.* § 33.034(h).

### Historical Interpretation of the Commission's Procedure

The Examiner acknowledges that this is the first time that the Commission has issued a sanction following a formal proceeding and that, until very recently, it has publicly taken the position that a sanction may not be imposed after a formal proceeding. In its advice to the judiciary published on its web page, the Commission's diagram describing its process for handling complaints shows that sanctions only follow informal proceedings, not ones submitted based on formal charges:

---

7. "A judge should require staff, court officials and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge...." *See* TEX.CODE JUD. CONDUCT, Canon 3(C)(2).

8. A special court of review does not impose civil or criminal liability, but regulates judi-

cial conduct to offer guidance to judges and protection for the public. *In re Davis,* 82 S.W.3d 140, 150 (Tex.Spec.Ct.Rev.2002). The special court of review's decision is not appealable. *See* Tex. Gov't Code Ann. § 33.034(i).

State Comm'n on Jud. Conduct, Complaint Process Flowchart, *available at* http://www.scjc.state.tx.us/pdf/complaint-process.pdf (last visited Oct. 7, 2010).

The procedure diagrammed in the Commission's chart matches the scheme described by special courts of review and review tribunals that have discussed the procedure. Sixteen years ago, the first formal removal proceeding was instituted under article 5, section 1–a of the Texas Constitution, and the review tribunal explained the Commission's entire process for resolving complaints. *See In re Thoma*, 873 S.W.2d 477, 483–84 (Tex.Rev. Trib.1994, no appeal). The *Thoma* tribu-

nal described a scheme whereby the Commission will investigate a complaint against a judge and then render its decision to dismiss the complaint, issue an appropriate informal sanction, or institute formal proceedings. *Id.* at 483.

In the event of informal proceedings, the Texas Constitution provides that the Commission "may in its discretion issue a private or public admonition, warning, reprimand, or requirement that the person obtain additional training or education," TEX. CONST. art. V, § 1–a(8). These specific consequences that the Commission may impose as a result of informal proceedings are collectively referred to as "sanctions" in Chapter 33 of the Government Code, which governs the Commission. *See* TEX. GOV'T CODE ANN. § 33.001(a)(10). If any of these informal sanctions are imposed, the judge may request review of; the informal sanction by a special court of review. *Id.* § 33.001(a)(10).

"In the alternative, the Commission may institute formal proceedings in which case notice of formal proceedings are served on the judge in question." *Thoma,* 873 S.W.2d at 483. The Commission may direct that the formal hearing be before it or before a Special Master. *Id.* at 484. "Subsequent to the conclusion of all hearings, the Commission renders its decision to dismiss the complaint, publicly censure the judge, or recommend the removal or the retirement of the judge." *Id.* With the exception of one tribunal, every special court of review and tribunal that has addressed this procedure has described it similarly. *See, e.g., In re Jenevein,* 158 S.W.3d 116, 119 (Tex.Spec.Ct.Rev.2003) ("[T]he Legislature has provided an appeal by special court of review only for the Commission's sanctions assessed as a result of informal proceedings...."); [9] *In re Bell,* 894 S.W.2d 119, 122 (Tex. Spec.Ct.Rev.1995) ("Upon completion of its investigation, the commission may dismiss

---

9. The Texas Constitution does not provide for a right of review of the Commission's issuance of the types of consequences defined as sanctions under the Government Code or an order of public censure. *Jenevein,* 158 S.W.3d at 119; *see* TEX. CONST. art. V, § 1–a(8). In 1987, the Texas Government Code was amended to provide a right of review for any judge who received from the Commission any type of "sanction," as that term is defined in Chapter 33. Act of July 20, 1987, 70th Leg., 2d C.S., ch. 47, § 2, 1987 Tex. Gen. Laws 143 (amended 1999 and 2009) (current version at Tex. Gov't Code Ann. § 33.034(a)). In 2003, the *Jenevein* court held that Texas law provided no right of review for a judge who received a censure issued by the Commission. *Jenevein,* 158 S.W.3d at 119. In *Jenevein,* the special court of review specifically held that it did not have jurisdiction to review a censure issued by the Commission after formal proceedings had been conducted before a special master because no statute provided for a right to appeal a censure. *Id.* In determining that the right to appeal a sanction to a special court of review did not include a right to appeal the censure, the court explained that a sanction comes after an informal proceeding, but a censure is a separate type of order that comes only after a formal proceeding. *Id.* at 118. The *Jenevein* court stated,

> Article V, Sections 1–a(8) and 1–a(9) of the Texas Constitution refer to censure only within the context of formal proceedings, while sanctions are contemplated under Section 1–a(8) in the context of informal proceedings. Therefore, we conclude that an appeal to a special court of review is provided only after informal proceedings and not after formal proceedings resulting in a public censure.

*Id.* (citations omitted). After *Jenevein* was decided, the Legislature added a right to appeal censures. Act of May 27, 2009, 81st Leg., R.S., ch. 805, § 1, 2009 Tex. Gen. Laws 2032 (codified at Tex. Gov't Code Ann. § 33.034). Because the statute defining "sanctions" remained the same, the observations in *Jenevein* concerning the sanction contemplated by the Texas Constitution and Government Code remain unaffected by the change in the law concerning censures. *See id.*

the complaint, issue a private or public admonition, warning, reprimand, or require that the judge obtain additional training or education, or institute formal proceedings concerning public censure, removal, or retirement"). *But see In re Lowery,* 999 S.W.2d 639, 652–53 (Tex.Rev. Trib.1998, appeal denied) (stating that after formal proceedings, "the Commission may dismiss the case or publically order a censure, reprimand, warning, or admonition." (citing Tex.R. Rem'l/Ret. Judg. 10)).

### Texas Constitution and Government Code

Although for over fifteen years special courts of review and review tribunals have determined that "sanctions" may be assessed only prior to a formal proceeding, the Commission's sudden reversal of position to now impose a sanction after a formal proceeding requires that we address whether the Texas Constitution and Government Code permit such an outcome. As this is the first time that a sanction has been imposed in this procedural posture, i.e., following a formal hearing, prior decisions interpreting this procedure are dicta and, therefore, not binding. *See, e.g., Travelers Indem. Co. v. Fuller,* 892 S.W.2d 848, 851 n. 3 (Tex.1995); *Valmont Plantations v. State,* 163 Tex. 381, 384, 355 S.W.2d 502, 503 (1962). We must address as a matter of first impression whether the Texas Constitution and Government Code permit a sanction to be imposed following a formal hearing. We examine (A) the law concerning interpretation of the constitution and statutes, (B) the plain language of the Texas Constitution and Government Code, and (C) the consequences of the constructions proposed by the parties.

### A. Law for Interpreting Constitution and Statutes

 It is well established that a reasonable construction should be given to constitutional provisions and that a provision will not be construed so as to lead to absurd conclusions, great public inconvenience, or unjust discrimination, if any other interpretation can be reasonably indulged. *R.R. Comm'n v. St. Louis Sw. Ry. Co.,* 443 S.W.2d 71, 74 (Tex.Civ.App.-Austin 1969, writ ref'd n.r.e.) (citing *Cramer v. Sheppard,* 140 Tex. 271, 287, 167 S.W.2d 147, 155 (1942)). We should avoid constitutional questions when possible. *See In re Hecht,* 213 S.W.3d 547, 552 n. 5 (Tex. Spec.Ct.Rev.2006).

 Statutory construction is a question of law for the court. *Id.* at 564. Our primary objective in statutory construction is to give effect to the Legislature's intent. *See Hernandez v. Ebrom,* 289 S.W.3d 316, 318 (Tex.2009); *State v. Shumake,* 199 S.W.3d 279, 284 (Tex.2006). We rely on the plain meaning of the text unless such a construction leads to absurd results. *See City of Rockwall v. Hughes,* 246 S.W.3d 621, 625–26 (Tex.2008). "If the Legislature provides definitions for words it uses in statutes, then we use those definitions in our task." *Hernandez,* 289 S.W.3d at 318 (citing Tex. Gov't Code Ann. § 311.011(b) (Vernon 2005)). When interpreting a statute, we read words and phrases in context and construe them according to the rules of grammar and common usage, unless statutorily defined. Tex. Gov't Code Ann. § 311.011(a), (b). In determining legislative intent, we may consider, among other things, the objective the law seeks to obtain and the consequences of a particular construction. Tex. Gov't Code Ann. § 311.023(1), (5) (Vernon 2005). We consider the statute as a whole and not its provisions in isolation. *See Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc.,* 35 S.W.3d 591, 593 (Tex.2000).

 Article 5, section 1–a(14) of the Texas Constitution specifically gives the

Legislature the power to "promulgate laws in furtherance of this Section that are not inconsistent with its provisions." TEX. CONST. art. V, § 1–a(14). "When given the power to implement constitutional provisions, the Legislature may define terms which are not defined in the constitution itself, provided its definitions constitute reasonable interpretations of the constitutional language and do not do violence to the plain meaning and intent of the constitutional framers." *In re Sheppard,* 815 S.W.2d 917, 920 (Tex.Spec.Ct.Rev.1991); *see Swearingen v. City of Texarkana,* 596 S.W.2d 157, 160 n. 1 (Tex.Civ.App.-Texarkana 1979, writ ref'd n.r.e.).

### B. Plain Language

To support her position that the warning was not a permissible outcome following the formal hearing, Judge Keller relies on the plain language of (1) the Texas Constitution and (2) the Government Code.

### 1. The Texas Constitution

Article 5, section 1–a(8) of the Texas Constitution states:

> After such investigation as it deems necessary, the Commission may in its discretion issue a private or public admonition, *warning,* reprimand, or requirement that the person obtain additional training or education, *or* if the Commission determines that the situation merits such action, it may institute formal proceedings and order a formal hearing to be held before it concerning the public censure, removal, or retirement of a [judge or justice] ... or it may in its discretion request the Supreme Court to appoint ... a Master to hear and take evidence in any such matter, and to report thereon to the Commission.... If, after formal hearing, or after considering the record and report of a Master, the Commission finds good cause therefor, it *shall* issue an order of

> public *censure* or it shall recommend to a review tribunal the *removal* or *retirement,* as the case may be, of the person in question ... and shall thereupon file with the tribunal the entire record before the Commission.

TEX. CONST. art. V, § 1–a(8) (emphasis added). This section's pertinent terms are not defined in the Constitution. *See id.*

Examining this language, the Texas Constitution plainly describes two alternative avenues that may be taken and their consequences. Under the first avenue, involving informal proceedings, the Commission may conduct an investigation as it deems necessary and in its discretion issue a public warning. In the alternative avenue, involving formal proceedings, the Commission may, if the situation merits, order a formal hearing concerning the public censure, removal, or retirement of a judge.

■ To support its position that the list of permissible consequences following a formal proceeding is not exhaustive, the Commission points out that dismissal of the case is not listed as an outcome yet it undisputedly can be a proper outcome. In other words, the Commission contends that merely because certain, greater consequences are listed, the Constitution does not preclude the possibility of a lesser consequence, such as a warning to result from formal proceedings. We recognize that the listing of certain consequences does not always preclude other outcomes. *Compare Johnson v. Second Injury Fund,* 688 S.W.2d 107, 108–09 (Tex.1985) (applying interpretative maxim *expressio unius est exclusio alterius,* meaning that express mention of one consequence is equivalent to express exclusion of all others), *with Mid–Century Ins. Co. of Tex. v. Kidd,* 997 S.W.2d 265, 274 (Tex.1999) (stating that

*expressio unius est exclusio alterius* is not conclusive).

The plain language of the Constitution allows a sanction as a permissible consequence after an informal investigation and before the institution of a formal hearing, but we do not view the plain language as conclusive on the matter of penalties short of censure, removal, or retirement. Because the Constitution gives the Legislature the right to promulgate consistent laws and definitions, we must next examine the Government Code's plain language. *See* Tex. Const. art. V, § 1–a(14); *Sheppard,* 815 S.W.2d at 920.

### 2. The Government Code

The Legislature has defined words that are used in article 5 of the Texas Constitution. *See* Tex. Gov't Code Ann. § 33.001. "Censure" means "an order of denunciation issued by the Commission under section 1–a(8), Article V, Texas Constitution, or an order issued by a review tribunal under section 1-a(9), Article V, Texas Constitution." Tex. Gov't Code Ann. § 33.001(a)(1). A censure results from "formal proceedings," which are defined as the proceedings ordered by the Commission concerning the public censure, removal, or retirement of a judge. *See id.* § 33.001(a)(7). "Formal hearing" means the public evidentiary phase of formal proceedings conducted by the Commission or a Special Master. *Id.* § 33.001(a)(6). Applying the Government Code's definitions, the plain language shows that a censure can result only after a formal hearing. *See Hernandez,* 289 S.W.3d at 318 (citing Tex. Gov't Code Ann. § 311.011(b)).

Although the language plainly provides that a censure may only result from a formal proceeding, the language concerning a "sanction" is not as clear. The Government Code defines "sanction" as an order issued by the Commission "provid-ing for a private or public admonition, warning, or reprimand or requiring that a person obtain additional training or education." Tex. Gov't Code Ann. § 33.001(a)(10). This definition of sanction encompasses the types of consequences that can occur after an informal proceeding under the Texas Constitution. *See* Tex. Const. art. V, § 1–a(8) ("After such investigation as it deems necessary, the Commission may in its discretion issue a private or public admonition, warning, reprimand, or requirement that the person obtain additional training or education, or . . . it may institute formal proceedings. . . ."). The Government Code's definition of sanction does not specifically exclude a sanction after a formal proceeding. Furthermore, the listing of certain outcomes does not necessarily preclude lesser consequences. *See Mid–Century Ins. Co.,* 997 S.W.2d at 274. We conclude that, like the language of the Texas Constitution, the language of the Government Code suggests that a sanction is a permissible outcome absent a formal proceeding, but the plain language is similarly inconclusive.

### C. Consequences of Proposed Construction

▮▮▮ Because the plain language is inconclusive, we examine the objectives of the Texas Constitution and Government Code and the consequences of the construction offered by the parties. *See* Tex. Gov't Code Ann. § 311.023. The Texas Constitution does not provide any specific right to appeal a sanction or censure. *See Jenevein,* 158 S.W.3d at 119. Although no specific right of appeal concerning sanctions and censures is mentioned in the Texas Constitution, this right was created by the Legislature. *See* Tex. Gov't Code Ann. § 33.034(a).

▮▮▮ The Government Code provides for a special court of review to conduct a

trial de novo for a sanction and a review of the record of the formal hearing for a censure. *See id.* § 33.034(a), (e). We conclude that a sanction receives a trial de novo because the Constitution and Government Code contemplate that a sanction will be assessed only prior to formal proceedings. A censure receives a review of the record because a censure will be assessed only after formal proceedings.

A censure is a greater consequence than a sanction.[10] A censure is an order of denunciation, which is a condemnation. *See* TEX. GOV'T CODE ANN. § 33.001(a)(1); *Black's Law Dictionary* 500 (9th ed. 2009) (defining "denouncement," as "1. An act of ... condemnation"). It takes seven votes to censure a judge[11] and it can only occur after a formal proceeding. TEX. CONST. art. V, § 1–a(5); TEX. GOV'T CODE ANN. § 33.001(a)(7) (defining "formal proceedings" as proceedings concerning public censures). In contrast, a sanction is a warning that can be private or public and it results from informal investigations. *See* TEX. CONST. art. V, § 1–a(8); TEX. GOV'T CODE ANN. § 33.001(a)(10), § 33.022(c)(2)(A) (Vernon 2004). A sanction can result from fewer votes than a censure. *See* TEX. CONST. art. V, § 1–a(5); TEX.R. REM'L/RET. JUDG. 10(m).

Although a sanction is a lesser consequence than a censure, a sanction is given a right to a broader scope of review in that it is reviewed by trial de novo as that term is used in the appeal of cases from justice to county court. *See* TEX. GOV'T CODE ANN. § 33.034(a), (e)(2). The special court of review is not bound to the Commission's findings, conclusions, or order. *See Sheppard*, 815 S.W.2d at 918. Although a censure is a greater consequence than a sanction, a censure is given a more constrained right of review in that it is reviewed by a review of the record, with the possibility of limited additional evidence. *Compare* TEX. GOV'T CODE ANN. § 33.034(e)(1), *with id.* § 33.034(e)(2).

To explain why the Legislature might provide for a trial de novo for the lesser consequence, the Commission compares the sanction to a traffic ticket, which is a Class C misdemeanor offense that receives a trial de novo in the county court if it was first filed in a justice court. *See* TEX. TRANSP. CODE ANN. § 542.401 (Vernon 1999); *Ex parte Spring*, 586 S.W.2d 482, 486 (Tex.Crim.App.1978) (Glass C misdemeanors filed in justice court have trial de novo upon appeal to county court). This example, however, both supports and defeats the Commission's position. The

---

**10.** Though not part of the Texas Constitution or Government Code, the Supreme Court's Rules explain that censures are "[m]ore severe than the remedial sanctions issued prior to a formal hearing." TEX.R. REM'L/RET. JUDG. 1(f).

**11.** Article 5, section I-a(5) states, "A quorum shall consist of seven members. Proceedings shall be by majority vote of those present, except that recommendations for retirement, censure, suspension, or removal of any person holding an office named in Paragraph A of Subsection (6) of this Section shall be by affirmative vote of seven members." TEX. CONST. art. V, § 1–a(6)(A). In contrast, Rule 10(m) states, "If, after hearing, upon considering the record and report of the special master, the Commission finds good cause therefore, by affirmative vote of six of its members, it shall recommend to the Review Tribunal the removal, or retirement, as the case may be; or in the alternative, the Commission may dismiss the case or publicly order a censure, reprimand, warning, or admonition," TEX.R. REM'L/RET. JUDG. 10(m). Although Rule 10(m) permits a censure with only six votes, the Texas Constitution requires seven votes. Rule 10(m) requires six votes for a sanction but the Texas Constitution requires only a majority of those present so long as a there is a quorum of seven.

Commission correctly observes that most minor traffic ticket appeals receive a trial de novo and, at first blush, this appears to be analogous to a sanction. But the Commission fails to recognize that the Legislature has treated the appeals of traffic tickets differently based on whether the court was a municipal court of record, or a municipal court that was not a court of record or a justice court. *See* TEX. CRIM. PROC. CODE ANN. art. 44.17 (Vernon 2006) ("In all appeals to a county court from justice courts and municipal courts other than municipal courts of record, the trial shall be de novo in the county court.... An appeal to the county court from a municipal court of record may be based only on errors reflected in the record.").[12] Except for municipal courts of record, typically there is no record of the proceedings at a traffic ticket trial. *See Spring*, 586 S.W.2d at 486. Without a record, the Legislature has determined that a de novo trial is necessary. *See* TEX. CRIM. PROC.CODE ANN. art. 44.17. Conversely, with a record, the Legislature has determined that an appeal by review of the record is appropriate. *See id.*

Like a traffic ticket, a sanction issued after an informal investigation would typically not have a reporter's record. *See, e.g.*, TEX. GOV'T CODE ANN. § 33.022(c)(2)(A) (Commission may order judge to submit written response or appear informally before it); *id.* § 33.022(c)(2)(C) (Commission may request complainant to appear informally before it); *id.* § 33.022(f) (judge entitled to written notification of disposition

but no mention of any right to record or evidence considered by Commission). A trial de novo is necessary due to the absence of a reporter's record. *See Spring*, 586 S.W.2d at 486 ("Where the initial proceeding will be unrecorded ... the broader right of appeal to a trial de novo in county court does no more than guarantee an equal right to due process of law."); *see also* TEX. GOV'T CODE ANN. § 30.00014 (Vernon Supp.2010) (appeal to county court from municipal court of record "may not be by trial de novo").

We also note that a trial de novo is necessary because sanctions resulting from informal proceedings before the Commission may lack basic elements of due process, such as the right to confront witnesses for cross-examination and other elements that normally attend trials, *Cf.* TEX. CONST. art, V, § 1–a(5) (requiring due process of law for formal proceedings before Commission and Master, including right to notice, counsel, hearing, and confrontation of accusers).

An examination of the Government Code as a whole shows that the Legislature gave sanctioned judges the right to a trial de novo because the sanction came as a result of an informal investigation where there was no record available to the special court of review and the attendant guarantees of due process may not have been required. *See* TEX. GOV'T CODE ANN. § 33.034(a), (e)(2); *Hernandez*, 289 S.W.3d at 318; *Tex. Workers' Comp. Ins. Fund*, 35 S.W.3d at 593. We conclude that a warning, a lesser sanction, is afforded a trial de novo

12. An appeal from a municipal court that is not a court of record is by trial de novo because there is no "trial record" for the county court to consider on appeal. *See State v. Blankenship*, 170 S.W.3d 676, 680 n. 7 (Tex.App.-Austin 2005, pet. ref'd); *Tweedie v. State*, 10 S.W.3d 346, 348 (Tex.App.-Dallas 1998, no pet.). By comparison, an appeal from a municipal court of record must be "based only on errors reflected in the record." Tex.Code Crim. Proc. Ann. art. 44.17; *see also* TEX. GOV'T CODE ANN. § 30.00014(b) (Vernon Supp.2010); TEX.CRIM. PROC.CODE ANN. art. 45.042(b) (Vernon 2006) ("Unless the appeal is taken from a municipal court of record and the appeal is based on error reflected in the record, the trial shall be de novo.").

because a fact finder has not already heard evidence in a formal proceeding. Engrafting a warning into the range of penalties after a formal proceeding would lead to an absurd result—an automatic second trial for warnings after formal proceedings but not for censure, removal, or forced retirement—with the latter penalties greater in severity but entitled to less appellate review. *See City of Rockwall*, 246 S.W.3d at 625–26 (courts should avoid absurd results in interpreting statutes). We hold that under the Texas Constitution and Government Code, a warning cannot be a consequence that follows from a formal proceeding. *See* Tex. Const. art. V, § 1–a(8); Tex. Gov't Code Ann. § 33.001(a).

## Rules for the Removal or Retirement of Judges

Pursuant to its authority under article 5, section 1–a(11) of the Texas Constitution,[13] the Supreme Court of Texas promulgated an Order stating the procedural rules for the removal or retirement of judges (hereafter, "the Rules"). *See* Tex.R. Rem'l/Ret. Judg. 1–18. As its authority for taking the action it did, the Commission heavily relies on Rule 10(m), which contemplates a sanction after a formal proceeding. *See* Tex.R. Rem'l/Ret. Judg. 10(m). Judge Keller responds that Rule 10(m) is contrary to the Texas Constitution, inconsistent with the Government Code, and inconsistent with the other Rules in the Order.

Rule 10(m) is entitled "Formal Proceedings." *Id.* Rule 10(m) states, "If, after hearing, upon considering the record and report of the special master, the Commission finds good cause therefore, by affirmative vote of six of its members, it shall recommend to the Review Tribunal the removal or retirement, as the case may be; or in the alternative, the Commission may dismiss the case or publicly order a censure, reprimand, warning, or admonition." *Id.* Rule 10(m) is the only provision that contemplates a sanction as a consequence after a formal hearing. *Id.* Rule 10(m), however, is inconsistent with (1) the definitions and other rules in the Supreme Court Order, and (2) the Texas Constitution and the Government Code.

### A. Law for Interpreting Construction of Rules

Statutory construction is a matter of law, subject to de novo review. *City of Rockwall*, 246 S.W.3d at 625. "Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute." *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex.1993). We also give great weight to an agency's

---

**13.** Article 5, section 1–a(11) of the Texas Constitution gives the Texas Supreme Court the authority to promulgate rules. The Constitution states:

The Supreme Court shall by rule provide for the procedure before the Commission, Masters, review tribunal, and the Supreme Court. Such rule shall provide the right of discovery of evidence to a ... Judge ... after formal proceedings are instituted and shall afford to any person holding an office or position specified in Subsection (6) of this Section, against whom a proceeding is instituted to cause his retirement or remov-

al, due process of law for the procedure before the Commission, Masters, review tribunal, and the Supreme Court in the same manner that any person whose property rights are in jeopardy in an adjudicatory proceeding is entitled to due process of law.... Due process shall include the right to notice, counsel, hearing, confrontation of his accusers, and all such other incidents of due process as are ordinarily available in proceedings whether or not misfeasance is charged, upon proof of which a penalty may be imposed.

Tex. Const. art. V, § 1–a(5).

interpretation of its own rules and regulations, limiting our consideration to whether the interpretation is plainly erroneous or inconsistent with the plain language of the rule. *See Pub. Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 207 (Tex. 1991).

## B. The Definitions of Words and Comparison of the Rules

Rule 1 provides the following definition for "sanction":

> "Sanction" means any admonition, warning, reprimand, or requirement that the person obtain additional training or education, issued publicly or privately, by the Commission pursuant to the provisions of Article V, Section 1–a, Paragraph (8) of the Texas Constitution. A sanction is remedial in nature. It is issued prior to the institution of formal proceedings to deter similar misconduct by a judge or judges in the future, to promote proper administration of justice, and to reassure the public that the judicial system of this state neither permits nor condones misconduct.

Tex.R. Rem'l/Ret. Judg. 1(e). The Rule's definition for sanction expressly states it is "issued prior to the institution of formal proceedings." *Id.*; *see Jenevein*, 158 S.W.3d at 118 (stating "sanction" has technical, legal meaning in area of judicial misconduct).

Rule 1(f) provides the following definition for "censure":

> "Censure" means an order issued by the Commission pursuant to the provisions of Article V, Section 1–a, Paragraph. (8) of the Texas Constitution or an order issued by a Review Tribunal pursuant to the provisions of Article V, Section 1–a, Paragraph (9) of the Texas Constitution. An order of censure is tantamount to denunciation of the offending conduct, and is more severe than the remedial

sanctions issued prior to a formal hearing.

Tex.R. Rem'l/Ret. Judg. 1(f). The definition for censure contrasts it as being unlike a sanction that is "issued prior to a formal hearing."

The definitions in Rule 1(e) and (f) both describe a warning as an option only prior to a formal hearing. These technical definitions are inconsistent with Rule 10(m), which purports to allow a warning following a formal hearing. Applying the Rule's own technical definition for the word "sanction"—a warning issued prior to the institution of formal proceedings—to the plain language in Rule 10(m)—allowing the Commission to issue a warning after a formal proceeding—leads to an absurd result due to the contradiction between Rule 1(e)'s definition of "sanction" and Rule 10(m)'s application of the word. *See* Tex.R. Rem'l/Ret. Judg. 1(e), 10(m).

Rule 9(d) is also inconsistent with Rule 10(m). Rule 9(d) states, "Decision by the Special Court of Review may include dismissal, affirmation of the Commission's decision, imposition of a lesser or greater sanction, or order to the Commission to file formal proceedings." Tex.R. Rem'l/Ret. Judg. 9(d). By giving the special court of review in the appeal of a sanction the option of issuing an "order [to] the Commission to file formal proceedings," Rule 9(d) presumes that a formal proceeding has not yet occurred. The presumption that no formal proceedings have occurred is inconsistent with Rule 10(m), which would purportedly allow a sanction after a formal proceeding.

In short, the Rules are internally inconsistent concerning whether a sanction may be issued after a formal hearing. We cannot conclude, therefore, that the Supreme Court intended for Rule 10(m) to invalidate Rules 1(e), 1(f), and 9(d), which plainly describe a sanction as occurring before

a formal proceeding only. *See Pub. Util. Comm'n,* 809 S.W.2d at 207 (interpretation must not be plainly erroneous or inconsistent with plain language of rule).

**C. Rule 10(m) is Inconsistent with Texas Constitution and Government Code**

The consequences of reprimand, warning, and admonition referred to in Rule 10(m) are each defined as a "sanction" in the Government Code and included within the Texas Constitution's outcomes that follow from an informal investigation. *See* TEX. CONST. art. V, § 1–a(8) ("After such investigation as it deems necessary, the Commission may in its discretion issue a private or public admonition, warning, reprimand, or requirement that the person obtain additional training of education, or . . . it may institute formal proceedings. . . ."); TEX. GOV'T CODE ANN. § 33.001(a)(10); TEX.R. REM'L/RET. JUDG. 10(m). As we have noted above, the Texas Constitution and Government Code contemplate that a sanction will not be a consequence that can follow from a formal proceeding. Furthermore, the Texas Constitution specifically gives the Legislature the power to "promulgate laws in furtherance of this Section that are not inconsistent with its provisions." TEX. CONST. art. V, § 1–a(14). Rule 10(m) is the only rule that would allow a sanction after formal proceedings, and it is inconsistent with the Texas Constitution and the Government Code.

Because Rule 10(m) is inconsistent with the definition of terms that it purports to apply, the other Rules in the Order, the Government Code, and the Texas Constitution, we conclude that Rule 10(m) could not properly authorize the Commission to issue a sanction after a formal proceeding. *See Tarrant Appraisal Dist.,* 845 S.W.2d at 823 (construction by agency must be reasonable); *see also Sheppard,* 815 S.W.2d at 920 (legislative interpretation of constitutional language must not do violence to plain meaning and intent of constitutional framers).

We also note that the Commission has consistently disregarded Rule 10(m) and instead interpreted the Constitution, Government Code, and other Rules as disallowing a sanction after a formal proceeding. *See Tarrant Appraisal Dist.,* 845 S.W.2d at 823. As noted by the Commission's web page and Examiner Willing's comments to the *Texas Lawyer,* the Commission determined the best procedure was to disallow a sanction after formal proceedings. Willing explained that, by disallowing a sanction after a formal proceeding, a judge has more incentive to accept a sanction instead of risking a formal proceeding that could result only in a censure, or recommended removal or retirement. Except for this isolated application of Rule 10(m) to Judge Keller, the Commission's public position, both before and after this sanction, has consistently been that a sanction cannot follow a formal proceeding. Because the Commission's interpretation of the applicable law to disallow a sanction after a formal proceeding is not unreasonable, we must give great weight to the Commission's consistent interpretation of rules and regulations it enforces. *See Pub. Util. Comm'n,* 809 S.W.2d at 207. We hold that a sanction is available only after informal proceedings, that a sanction may not be imposed after formal proceedings, and that the Commission erred as a matter of law by issuing a sanction following the formal proceedings in this case.

## Dismissal of Order

Having determined the Commission erred by issuing a sanction not permitted by the Texas Constitution and Government Code under the circumstances of this case,

we must next determine whether the error requires dismissal of the Order.[14] As we have explained above, after the initiation of the formal proceedings, the Commission could, with seven votes and a finding of good cause, authorize issuance of a censure, or recommend the removal or retirement of Judge Keller. In the absence of a finding of good cause and the requisite number of votes, the Commission was required to dismiss the charges. Here, by failing to either authorize a censure or to recommend the removal or retirement of Judge Keller, the Commission implicitly acknowledges that it did not find good cause for its actions or have the required votes to take those actions.[15] The Commission, therefore, had no option but to dismiss the charges against Judge Keller.

The Government Code provides that the court of review "shall issue a decision as to the proper disposition of the appeal." *See* Tex. Gov't.Code Ann. § 33.034(h). The Rules concerning "Review of Commission Decision" are more specific in that they state, "Decision by the Special Court of Review may include dismissal, affirmation of the Commission's decision, imposition of a lesser or greater sanction, or order to the Commission to file formal proceedings." Tex.R. Rem'l/Ret. Judg. 9(d). Other than dismissal, none of these options is available to us. We cannot affirm the Commission's decision because the Commission's Order is erroneous as a matter of law in that it violates the Texas Constitution and Government Code. *See* Tex.

**14.** In a direct appeal, a finding of voidness entitles the appellant to a remand for a new trial. *See Bird v. Kornman,* 152 S.W.3d 154, 160 (Tex.App.-Dallas 2004, no pet.); *see also Levy v. State,* 818 S.W.2d 801, 802–03 (Tex. Crim.App.1991) (when defendant's punishment was void as impermissibly lenient, remedy on direct appeal was remand for proper assessment of punishment). Judge Keller has contended that this Special Court of Review should declare the Commission's order void. However, this is a direct appeal to this special court of review. *See* Tex. Govt.Code Ann. § 33.034(e)(2). Because a finding of voidness places parties in the position they were in before the void order, finding the Order void here would not answer the question whether the September 2, 2010 charging document must be dismissed. *See State ex rel. Latty v. Owens,* 907 S.W.2d 484, 486 (Tex.1995) (finding of voidness results in placing parties in position they were before void order).

**15.** Throughout its written responses and at oral argument, the Examiner has asked for a trial de novo for the appeal of its sanction; it is not asking us to consider its action to be a censure, nor is it asking for an appeal by review of the record. *See* Tex. Gov't Code Ann. § 33.034. We also note that the record does not support a determination that the Commission issued a censure against Judge Keller. First, the Commission did not use the word

"censure" in its Order; it used the term "public warning," which is expressly included in the Government Code's definition of the word "sanction." Tex. Gov't Code Ann. § 33.001(a)(10). Second, the Commission's Order describes its review as conducted "[p]ursuant; to Rule 10(m) of the Procedural Rules for the Removal or Retirement of Judges." Tex.R. Rem'l/Ret. Judg. 10(m). Rule 10(m) states, "If, after hearing, upon considering the record and report of the special master, the Commission finds good cause therefore, by affirmative vote of six of its members, it shall ... publicly order a censure, reprimand, warning, or admonition." *Id.* According to Rule 10(m), the rule that the Commission says it followed, the Commission needed only six votes to sanction Judge Keller. But to issue a censure, the Commission needed at least seven votes. *See* Tex. Const. art. 5, § 1–a(5), (6)(A), (8). Nothing in the record before us shows that the Commission had at least seven votes to take any action at all, much less a censure. Furthermore, nothing in the record shows the Commission issued a censure based on a finding of good cause, which the Texas Constitution requires for a censure. *Id.* Because the Commission does not request that we construe its sanction order to be a censure, and because the record does not support such a reclassification, we confine our analysis to the "public warning" sanction.

CONST. art. V, § 1–a(8); TEX. GOVT.CODE ANN. § 33.001(a)(1).

Similarly, a greater or lesser sanction would not be a proper outcome as a matter of law. That outcome would effectively permit the Commission to circumvent the scheme for reviewing judicial conduct set forth in the Texas Constitution and Government Code. *See e.g., State v. Alley,* 137 S.W.3d 866, 869–70 (Tex.App.-Houston [1st Dist.] 2004) (litigant cannot convert non-record court into court of record by its personal decision to have court reporter transcribe proceedings; statutory procedures apply as written), *aff'd,* 158 S.W.3d 485 (Tex.Crim.App.2005). The only right to a trial de novo comes from an assessment of a sanction, which we have held was not permissible after a formal proceeding. The Commission has no right to appeal its own Order. *See* TEX.R. REM'L/ RET. JUDG. 9(a). The right of appeal belongs to Judge Keller only. *See* TEX. GOV'T CODE ANN. § 33.034(a), (b), (e). Importantly, in its request for a trial de novo, the Examiner has filed a new charging instrument that materially differs from the complaint that the Examiner presented to the Commission, which led to the Commission's sanction order. If we permitted a trial de novo, the charges for us to decide would be different from those decided by the Special Master and Commission. A trial de novo would circumvent the Government Code by giving the Commission a right of appeal to which it is not entitled. A trial de novo would permit the Commission to circumvent the framework for reviewing judicial conduct set forth in the Texas Constitution and Government Code.

Furthermore, we cannot, as a matter of law, order the Commission to file formal proceedings. TEX.R. REM'L/RET. JUDG. 9(d).

Rule 9(d) allows a special court of review to order the Commission to file formal proceedings under the assumption that no formal proceedings have yet occurred. *See id.* Because it is undisputed that formal proceedings have already occurred in this case, the filing of formal proceedings is not an option under this procedural posture. Therefore, affirming the Commission's decision, imposing a lesser or greater sanction, and ordering the Commission to file formal proceedings are not proper options under the law. *See* TEX.R. REM'L/ RET. JUDG. 9(d). The only remaining option under Rule 9(d) is dismissal of the charging document: *See id.*

We cannot conclude that the Texas Constitution and Government Code permit the Commission to re-initiate judicial conduct proceedings under the circumstances present in this case. Judge Keller has already undergone formal proceedings that did not result in censure or a recommendation for removal or retirement.[16] The Commission did not find good cause or vote to censure, seek removal, or seek retirement; the only remedy available, therefore, was to dismiss. Because the Commission failed to order the charges dismissed, as required by the Texas Constitution and the Government Code, we vacate its Order and dismiss the charges in the September 2, 2010 charging document.

### Conclusion

The Commission voted to proceed to a formal hearing, and following the formal hearing failed to make a finding of good cause to either censure or seek the removal or retirement of Judge Keller by the requisite number of votes of the Commission. We, therefore, vacate the Order issued by the Commission and enter the

---

**16.** We note that the Texas Constitution requires that the Supreme Court's Rules provide a judge in formal proceedings "all such other incidents of due process as are ordinarily available in proceedings." TEX. CONST. art. V, § 1–a(5).

order of dismissal mandated by the Texas Constitution and Government Code under these circumstances. In that we have reached our decision to dismiss by determining that the procedure employed by the Commission was erroneous, we express no opinion concerning the merits of the accusations against Judge Keller.

## AMENDED JUDGMENT

This Special Court of Review has considered the Honorable Sharon Keller's Motion to Dismiss and Brief in Support, the parties' written responses and oral arguments before the Special Court of Review, and the entire record that has been filed with this Court. This Court holds that the State Commission on Judicial Conduct erred as a matter of law by issuing the July 16, 2010 document titled "Commission's Findings, Conclusions and Order of Public Warning." Therefore, we vacate the Commission's order, and we render judgment dismissing the September 2, 2010 charging document filed by the Commission against Judge Keller.

## ORDER

This Special Court of Review has considered the Examiner's Motion for Rehearing. It is the opinion of the court that the motion should be and is hereby denied and that the opinion of October 11, 2010 and amended judgment of October 15, 2010 stand unchanged.