# Supreme Court of Texas

No. 22-1145

Dianne Hensley,

*Petitioner*,

v.

State Commission on Judicial Conduct et al.,

*Respondents*

On Petition for Review from the
Court of Appeals for the Third District of Texas

**Argued October 25, 2023**

CHIEF JUSTICE HECHT delivered the opinion of the Court, in which Justice Boyd, Justice Devine, Justice Blacklock, Justice Busby, Justice Bland, Justice Huddle, and Justice Young joined.

Justice BLACKLOCK filed a concurring opinion, in which Justice Devine joined.

Justice YOUNG filed a concurring opinion.

Justice LEHRMANN filed a dissenting opinion.

Judges, by their constitutionally mandated oath of office,[1] and to promote public confidence in the integrity and impartiality of the judiciary, must carefully and faithfully follow the law in all judicial proceedings, irrespective of their purely personal views.[2] And while they may have rights to hold and express personal views outside their judicial duties,[3] their extra-judicial actions must not cast reasonable doubt on their capacity to be equally fair to all.[4] Judges are subject to discipline for violating these fundamental principles.[5] And the parties to a case may move to recuse a judge who they believe cannot be fair.[6]

---

[1] *See* TEX. CONST. art. XVI, § 1(a) ("All elected and appointed officers, before they enter upon the duties of their offices, shall take the following Oath or Affirmation: 'I, [name], do solemnly swear (or affirm), that I will faithfully execute the duties of the office of [name office] of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God.'").

[2] *See* TEX. CODE JUD. CONDUCT, Canon 2(A), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. C ("A judge shall comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."). We refer to the provisions of the Texas Code of Judicial Conduct as Canons.

[3] *See Republican Party of Minn. v. White*, 536 U.S. 765, 788 (2002) (holding that "prohibiting candidates for judicial election from announcing their views on disputed legal and political issues violates the First Amendment").

[4] *See* TEX. CODE JUD. CONDUCT, Canon 4A ("A judge shall conduct all of the judge's extra-judicial activities so that they do not: (1) cast reasonable doubt on the judge's capacity to act impartially as a judge; or (2) interfere with the proper performance of judicial duties.").

[5] *See* TEX. CONST. art. V, § 1-a; TEX. GOV'T CODE §§ 33.001-33.051.

[6] *See, e.g.*, TEX. R. CIV. P. 18a (motions to recuse); *id.* R. 18b(b) ("A judge must recuse in any proceeding in which: (1) the judge's impartiality might reasonably be questioned; (2) the judge has a personal bias or prejudice

Petitioner, a justice of the peace,[7] is authorized by virtue of her judicial office to officiate at wedding ceremonies[8] but not required to do so as part of her judicial duties. She announced that because of her religious beliefs she would not perform weddings for same-sex couples but would refer them to others who would. No one in any case before her moved to recuse her for that reason. But the State Commission on Judicial Conduct[9] issued her a public warning (the Public Warning) "for casting doubt on her capacity to act impartially to persons appearing before her as a judge due to the person's sexual orientation in violation of Canon 4A(1) of the Texas Code of Judicial Conduct."[10] She did not

---

concerning the subject matter or a party . . . ."); *see also Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872 (2009) (holding that there is a federal due process right to recusal "when 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable'" (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975))).

[7] A justice of the peace serves a county precinct. *See* TEX. CONST. art. V, § 18. Very generally, justice courts have civil jurisdiction over small claims involving up to $20,000 and criminal jurisdiction over misdemeanors punishable by fine only. *See* TEX. GOV'T CODE §§ 27.001-27.060. There are around 800 justices of the peace in Texas. *See* Office of Court Administration, ANNUAL STATISTICAL REPORT FOR THE TEXAS JUDICIARY: FY 2022, at v (2023).

[8] *See* TEX. FAM. CODE § 2.202(a)(4), (b) (authorizing "a current, former, or retired federal judge or state judge", as defined by Section 25.025 of the Tax Code, to conduct a marriage ceremony); TEX. TAX CODE § 25.025 (a-1)(3)(c) ("'State judge' means . . . a justice of the peace . . . .").

[9] *See* TEX. CONST. art. V, § 1-a(2); TEX. GOV'T CODE § 33.002(a-1) ("The commission is an agency of the judicial branch of state government and administers judicial discipline.").

[10] State Comm'n on Jud. Conduct, *Public Warning: Honorable Dianne Hensley, Justice of the Peace, Precinct 1, Place 1, Waco, McLennan County, Texas*, CJC No. 17-1572 (Nov. 12, 2019) https://www.scjc.texas.gov/media/46780/hensley17-1572pubwarn111219.pdf.

avail herself of her right to appeal to a Special Court of Review (SCR)[11] but instead sued the Commission and its members and officers for violating the Texas Religious Freedom Restoration Act (TRFRA)[12] and her right to freedom of speech under Article I, Section 8 of the Texas Constitution (the Free Speech Clause).[13] The trial court dismissed her claims for want of jurisdiction, and the court of appeals affirmed.[14]

We hold that, apart from one declaratory request against the Commission,[15] petitioner's suit is not barred by her decision not to appeal the Commission's Public Warning or by sovereign immunity. Accordingly, we affirm the part of the court of appeals' judgment dismissing the one declaratory request for lack of jurisdiction, reverse the remainder of the judgment, and remand to the court of appeals to address the remaining issues on appeal.

---

[11] *See* TEX. GOV'T CODE § 33.034.

[12] TEX. CIV. PRAC. & REM. CODE §§ 110.001-110.012.

[13] "Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press." TEX. CONST. art. I, § 8.

[14] 683 S.W.3d 152 (Tex. App.—Austin 2022).

[15] Hensley's requested declaration against the Commission (but not the commissioners) that Canon 4A violates the Free Speech Clause is barred by sovereign immunity, as discussed in Part III.C below.

4

# I

## A

Dianne Hensley was first elected justice of the peace in McLennan County[16] in 2014 for a four-year term and has been re-elected twice since. Upon taking office, Hensley began officiating marriage ceremonies, as justices of the peace are authorized to do, charging $100 for each. At the time, same-sex marriage was unlawful in Texas.[17] But in June 2015, the United States Supreme Court decided *Obergefell v. Hodges*, holding that the U.S. Constitution "does not permit the State to bar same-sex couples from marriage on the same terms as accorded to couples of the opposite sex."[18] Hensley believes—it is undisputed, sincerely—that officiating a same-sex marriage would be inconsistent with her religious faith. So she stopped officiating marriages altogether.

To her knowledge, so did all the judges in the county at the time. Concerned that couples would lack access to a low-cost wedding, Hensley decided to resume conducting weddings for opposite-sex couples and to refer same-sex couples to others she and her staff identified in the area as willing to perform the marriages for the same $100 fee she charged. She prepared a form for her staff to hand out, which explained that she did not perform same-sex weddings because of her religious beliefs and provided contact information for others who would.

No one complained to Hensley, her staff, or the Commission about

---

[16] McLennan County is in central Texas. Its estimated population is 268,583, and its county seat is Waco.

[17] *See* TEX. CONST. art. I, § 32(a); TEX. FAM. CODE § 6.204(b).

[18] 576 U.S. 644, 680 (2015).

5

her marriage-referral system or her ability to be fair—or even her appearance of fairness—in any judicial proceeding. Nevertheless, the Commission learned of her system from an interview she gave a newspaper and opened a preliminary investigation in May 2018.[19] After Hensley responded to the Commission's written questions about her officiating practices and her reasons for declining to conduct same-sex ceremonies, the Commission issued a tentative public warning in January 2019,[20] concluding that she was violating Canon 3B(6), which applies to conduct in the performance of judicial duties,[21] and Canon 4A(1), which applies to a judge's extra-judicial conduct.[22]

Rather than accept the warning, Hensley chose to challenge it in a hearing before the Commission.[23] There she asserted that her speech

---

[19] *See* TEX. CONST. art. V, § 1-a(7) ("The Commission shall keep itself informed as fully as may be of circumstances relating to the misconduct or disability of [judges] . . . and make such preliminary investigations as it may determine.").

[20] The Commission may discipline a judge for "willful or persistent conduct that is clearly inconsistent with the proper performance of his duties or casts public discredit upon the judiciary or administration of justice." *Id.* § 1-a(6)(A). Among other things, "the Commission may in its discretion issue a private or public admonition, warning, reprimand, or requirement that the person obtain additional training or education". *Id.* § 1-a(8).

[21] "A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status . . . ." TEX. CODE JUD. CONDUCT, Canon 3B(6).

[22] *See supra* note 4.

[23] Under Rule 6 of the Commission's procedural rules, the Commission may offer a judge the opportunity to appear informally before the Commission terminates its investigation. Evidence is limited to the judge's testimony and

6

was protected by the Free Speech Clause and that the Commission's sanction infringed on her sincerely held religious beliefs in violation of TRFRA. She had notified the Commission and its members and officers in writing earlier, shortly after receiving the tentative warning, of her constitutional and TRFRA claims. At the hearing in August 2019, Hensley testified that if any party who appeared in her court expressed doubt about her impartiality based on her refusal to perform same-sex marriages, she would recuse herself from that case. Hensley stopped officiating weddings entirely around the time of the hearing, concerned that the Commission would further sanction her.

Following the hearing, the Commission issued the final Public Warning on November 12, 2019. The Public Warning found only a violation of Canon 4A(1), concluding that Hensley's referral system, an extra-judicial activity, cast reasonable doubt on her capacity to act impartially as a judge.

## B

Hensley was entitled to appeal the Public Warning to an SCR composed of three justices of the courts of appeals selected at random by the Chief Justice of this Court.[24] A judge must file a written request for an SCR within 30 days after the date the Commission issues its decision.[25] Hensley did not do so.

---

documentary evidence, and the judge may be represented by counsel. Hensley had three lawyers present at her hearing.

[24] TEX. GOV'T CODE § 33.034(a).

[25] *Id.* § 33.034(b).

7

Instead, on December 17, 2019, she sued the Commission and its members and officers[26] in district court under TRFRA. TRFRA provides that "a government agency may not substantially burden a person's free exercise of religion" unless it "demonstrates that the application of the burden to the person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that interest."[27] This prohibition expressly applies to an agency "order" or "decision", like the Public Warning the Commission issued to Hensley.[28] TRFRA contains a waiver of sovereign immunity from a TRFRA action.[29] A person who successfully establishes a violation is entitled to recover declaratory relief, injunctive relief to prevent future violations, and compensatory damages not to exceed $10,000, as well as attorney's fees and other expenses incurred in bringing the action.[30]

Hensley asserts that the Commission violated TRFRA by its investigation, Public Warning, and threat of future discipline if she persists in using her referral system and declining to perform same-sex marriages. She seeks damages for her lost income in not being able to perform opposite-sex weddings, declaratory relief under TRFRA, and injunctive relief prohibiting the Commission from further sanctioning

---

[26] We refer to the defendants collectively as the Commission unless the context or an express statement indicates otherwise.

[27] TEX. CIV. PRAC. & REM. CODE § 110.003(a)-(b).

[28] *Id.* § 110.002(a).

[29] *See id.* § 110.008(a) ("Subject to Section 110.006, sovereign immunity to suit and from liability is waived and abolished to the extent of liability created by Section 110.005 . . . .").

[30] *Id.* § 110.005(a)-(b).

her speech and conduct. She also seeks several declarations under the Uniform Declaratory Judgments Act (UDJA) against both the Commission and the commissioners, among them that: (1) the Commission's interpretation and application of Canon 4A(1) violates the Free Speech Clause; (2) the officiating of weddings is not a judicial 'duty' under Canon 3B(6); and (3) her referral system does not violate Article V, Section 1-a(6)(A) of the Texas Constitution.[31] Hensley also contends that the commissioners acted ultra vires and are therefore not protected by sovereign immunity. Hensley does not seek any form of relief that would require the Commission to reverse the Public Warning or take it down from its website.

The Commission filed a plea to the jurisdiction. It asserts, first, that Hensley's claims are an impermissible collateral attack on the Public Warning barred by her failure to exhaust her administrative remedies by not appealing it to the SCR—the exclusive forum provided by the Legislature for appeals from Commission warnings. Second, the Commission contends that Hensley's claims are barred by sovereign immunity for four reasons: (1) TRFRA's waiver of sovereign immunity does not apply because Hensley failed to strictly comply with TRFRA's notice requirement,[32] which functions as a jurisdictional requirement in

---

[31] This provision authorizes a sanction for "willful or persistent conduct that is clearly inconsistent with the proper performance of his duties or casts public discredit upon the judiciary or administration of justice." TEX. CONST. art. V, § 1-a(6)(A).

[32] TEX. CIV. PRAC. & REM. CODE § 110.006.

all suits against a governmental entity;[33] (2) the Commission has special immunity under Section 33.006 of the Texas Government Code,[34] not waived by TRFRA's general waiver; (3) the UDJA's sovereign immunity waiver does not apply;[35] and (4) the ultra vires doctrine does not negate immunity because the commissioners' actions were all discretionary and authorized.[36] The Commission's plea did not assert that the trial court lacked jurisdiction because Hensley failed to plead facts that, if true, would support her claims.[37]

---

[33] *See* TEX. GOV'T CODE § 311.034 ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.").

[34] *See id.* § 33.006(b)-(c) (providing that the Commission and commissioners are "not liable for an act or omission committed by the person within the scope of the person's official duties", and "[t]he immunity from liability provided by this section is absolute and unqualified and extends to any action at law or in equity").

[35] *See Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 552 (Tex. 2019) ("[T]he UDJA . . . provid[es] only a limited waiver for challenges to the validity of an ordinance or statute." (citing *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011))).

[36] *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) ("To fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act.").

[37] "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)).

The trial court agreed with the Commission and dismissed Hensley's claims for want of jurisdiction. The court of appeals affirmed.[38]

We granted Hensley's petition for review.

## II

We begin with whether an appeal of the Public Warning to the SCR was an administrative remedy that Hensley was required to exhaust before bringing this suit to recover for violations of her rights under TRFRA and the Free Speech Clause. The Commission argues that it was, and the lower courts agreed, holding that because Hensley chose not to avail herself of her appellate remedy, her suit is an impermissible collateral attack on the Public Warning. For several reasons, we disagree.

## A

District courts are presumed to have the jurisdiction to resolve legal disputes.[39] That presumption is overcome where the Constitution

---

[38] 683 S.W.3d at 152. The trial court also granted the plea to the jurisdiction on the bases that Hensley was seeking an advisory opinion and seeking to litigate unripe claims and granted the Commission's alternative plea of estoppel. The court of appeals did not address these additional reasons for granting the plea to the jurisdiction, nor did it address any reasons for granting the plea of estoppel.

Hensley moved for summary judgment on her claims. The trial court did not rule on her motion, and the court of appeals did not discuss her arguments that the motion should have been granted. Hensley and the Commission both brief the summary-judgment issues here, but we decline to address them in the first instance.

[39] *CPS Energy v. Elec. Reliability Council of Tex.*, 671 S.W.3d 605, 617 (Tex. 2023) (citing *Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 138 (Tex. 2018)); *see also* TEX. CONST. art. V, § 8.

11

or another law grants exclusive jurisdiction to another court or an administrative agency.[40] "A statute may grant an agency exclusive jurisdiction either expressly or by establishing a 'pervasive regulatory scheme' that impliedly 'indicates that the Legislature intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed.'"[41] A state agency has exclusive jurisdiction when the Legislature grants it sole authority to make an initial determination in "disputes that arise within the agency's regulatory arena."[42] "Thus, to establish exclusive jurisdiction over a particular issue, there must be (1) an express or implied grant of exclusive jurisdiction and (2) the issue must 'fall[] within that jurisdictional scope.'"[43] If the agency has exclusive jurisdiction over a particular issue, a trial court lacks jurisdiction over a claim involving that issue until the claimant has exhausted all available administrative remedies.[44]

Exhaustion is required so that the agency given exclusive jurisdiction can exercise it and because the administrative remedies

---

[40] *CPS Energy*, 671 S.W.3d at 617 (citing *Chaparral Energy*, 546 S.W.3d at 138).

[41] *Id.* (quoting *Chaparral Energy*, 546 S.W.3d at 138).

[42] *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 544 (Tex. 2016) (citing *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013)); *see also In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004); *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000).

[43] *CPS Energy*, 671 S.W.3d at 617 (alteration in original) (quoting *Chaparral Energy*, 546 S.W.3d at 139).

[44] *Id.* at 617-618.

12

provided may moot the claim. We have held repeatedly that a claim is barred when administrative remedies that could have mooted the claim were not exhausted.[45] But we have never held that administrative remedies must be exhausted when they *cannot* moot the claim—when exhaustion would be a pointless waste of time and resources.[46] Indeed, we have suggested the contrary.[47] The SCR could have reversed Hensley's Public Warning, but she does not seek reversal, and reversal could not have mooted her claims. One claim is that the sanction—while it existed, until any reversal—unduly burdened her freedoms of religion and speech. Reversal could have limited that claim to a shorter period,

---

[45] *See id.* at 618-620; *Garcia v. City of Willis*, 593 S.W.3d 201, 211-212 (Tex. 2019); *City of Beaumont v. Como*, 381 S.W.3d 538, 540 (Tex. 2012); *Patel v. City of Everman*, 361 S.W.3d 600, 601-602 (Tex. 2012); *City of Dallas v. Stewart*, 361 S.W.3d 562, 579-580 (Tex. 2012); *City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 235-237 (Tex. 2011).

[46] A cursory reading of *CPS Energy* might suggest otherwise. *See* 671 S.W.3d at 620. That case addressed a scenario where the agency's determination on the issue within the area of its exclusive jurisdiction had the potential—but was not guaranteed—to moot the plaintiff's constitutional claims. Requiring exhaustion was appropriate there because the agency's determination could have eliminated the need for the independent suit, and constitutional claims could still be pursued following exhaustion if they weren't mooted by the agency's determination. *CPS Energy* did not address a scenario where exhaustion had no potential to moot the plaintiff's constitutional claims *at all*.

[47] *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212 (Tex. 2002) (holding that a party who did not challenge an agency's findings was not required to pursue the available remedy of an appeal before suing in district court); *see also Hous. Fed'n of Tchrs., Loc. 2415 v. Hous. Indep. Sch. Dist.*, 730 S.W.2d 644, 646 (Tex. 1987) ("Parties are not required to pursue the administrative process regardless of the price. If irreparable harm will be suffered and if the agency is unable to provide relief, the courts may properly exercise their jurisdiction in order to provide an adequate remedy.").

13

but it could not have extinguished it. The other claim is that she is entitled to injunctive relief from the threat of future such sanctions. As we explain, the SCR is not authorized to grant injunctive relief.

**B**

Article V, Section 1-a of the Texas Constitution and Chapter 33 of the Texas Government Code create the Commission,[48] define its powers,[49] require and govern its administrative review of complaints and concerns regarding judges' conduct,[50] authorize it to impose sanctions of judges, and provide for de novo review of the Commission's decisions by an SCR.[51] The Commission "is an agency of the judicial branch of state government".[52] It "does not have the power or authority of a court".[53] The Commission consists of 13 members appointed with the advice and consent of the Senate.[54] Six are judges appointed by the Supreme Court: a justice of a court of appeals, a district judge, a county judge, a constitutional county judge, a justice of the peace, and a municipal judge. Two members are lawyers appointed by the State Bar. And five are public members appointed by the Governor. Commissioners generally serve one six-year term.[55] The Commission reviews,

---

[48] TEX. CONST. art. V, § 1-a(2) to (14).

[49] *See, e.g.*, TEX. GOV'T CODE §§ 33.002, 33.021.

[50] *Id.* §§ 33.0211-33.0212, 33.022.

[51] *Id.* § 33.034.

[52] *Id.* § 33.002(a-1).

[53] *Id.*

[54] TEX. CONST. art. V, § 1-a(2).

[55] *Id.* § 1-a(3).

14

investigates, and hears complaints of judicial misconduct.[56] The Commission alone is charged with enforcement of the Canons through sanctions, including public warnings.[57] The Commission has original jurisdiction to determine whether a judge has violated a Canon and, if so, the discretion to decide whether to impose a sanction. Because the Commission's membership regularly and routinely changes by design, one group's decisions are not binding on the next.

A judge subject to a lesser sanction, like the Public Warning in this case, may appeal by applying to the Chief Justice of the Supreme Court for the appointment of an SCR.[58] An SCR is composed of three justices of the courts of appeals randomly selected to serve for the one appeal only. If the judge were to be sanctioned again, even for the same type of action, or if another judge received a similar sanction, an appeal would be to a different SCR. The opinion of one SCR does not bind another.[59] An SCR has the power to dismiss or affirm a Commission

---

[56] *Id.* § 1-a(7).

[57] *See Hagstette v. State Comm'n on Jud. Conduct*, No. 01-19-00208-CV, 2020 WL 7349502, at *5 (Tex. App.—Houston [1st Dist.] Dec. 15, 2020, no pet.) (mem. op.) (holding that the trial court lacked jurisdiction over a suit by three judges to declare sanctions issued by the Commission void); *Schied v. Merritt*, No. 01-15-00466-CV, 2016 WL 3751619, at *6 (Tex. App.—Houston [1st Dist.] July 12, 2016, no pet.) (mem. op.) (holding that it lacked jurisdiction to adjudicate a claim that the trial judge's breached the Code of Judicial Conduct).

[58] TEX. GOV'T CODE § 33.034(a)-(b).

[59] *See In re Uzomba*, 683 S.W.3d 358, 363-364 (Tex. Spec. Ct. Rev. 2024) (per curiam) (noting "the recent opinion of another special court of review" that concluded "that the [SCR] may sua sponte determine that [a] Respondent violated additional canons", but nevertheless sustaining the Respondent's

decision, impose a lesser or greater sanction, or order the Commission to file formal proceedings against a judge.[60] Because it is created by statute, the SCR is limited in its powers to those expressly granted to it.[61] Nowhere has the SCR been granted the powers of a court of general jurisdiction or authorized to give injunctive, declaratory, or compensatory relief.

## C

Before the Commission, Hensley argued that her conduct did not violate Canon 4A(1) and that she should not be sanctioned. She also argued, separately, that TRFRA and the Free Speech Clause bar enforcement of the Canon against her for declining to perform same-sex marriages because of her religious beliefs, for stating those beliefs publicly, and for her marriage-referral system, even if her actions

---

"objections to the additional charges" that "were not included in [the Commission's] charging document").

[60] See Rule 9(d) of the Procedural Rules for the State Commission on Judicial Conduct.

[61] See TEX CONST. art. V, § 1 ("The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto."). In line with this, the SCR has interpreted its own jurisdiction exceedingly narrowly. See In re Jenevein, 158 S.W.3d 116 (Tex. Spec. Ct. Rev. 2003); In re Keller, 357 S.W.3d 413 (Tex. Spec. Ct. Rev. 2010). For example, in Jenevein, the SCR dismissed an appeal from a Commission order of public censure because it had resulted from "formal", not "informal", proceedings. 158 S.W.3d at 119. The Legislature subsequently found it necessary to amend the governing statute to provide a statutory right to appeal formal "censures" to the SCR. Keller, 357 S.W.3d at 420 n.9 (citing TEX. GOV'T CODE § 33.034).

16

violated the Canon and were sanctionable.[62]

The Commission ruled against Hensley on both arguments, concluding that she had violated Canon 4A(1) and is subject to sanction and, implicitly, by rejecting her second argument, that a sanction is not prohibited by the Free Speech Clause and TRFRA. Interpreting and applying the Canon was within the Commission's jurisdiction, subject to appeal to an SCR. But while the Commission can assess whether a sanction is prohibited by some other law, that jurisdiction is not exclusive. The district court may likewise determine whether a sanction is prohibited, and it is not bound by the Commission's or SCR's decisions.

In this district court action against the Commission, Hensley makes only her statutory and constitutional arguments. She has repeatedly asserted that she does not now complain that the Public Warning was an abuse of the Commission's discretion to interpret and apply Canon 4A(1). She does not seek review or reversal of that decision.[63] She accepts it for what it is: the Commission's exercise of its

---

[62] *See* TEX. CIV. PRAC. & REM. CODE § 110.004 ("A person whose free exercise of religion has been substantially burdened in violation of [TRFRA] may assert that violation as a defense in a judicial or administrative proceeding without regard to whether the proceeding is brought in the name of the state or by any other person.").

[63] Were Hensley requesting reversal of the Public Warning in her current action, the request would be barred by her failure to seek review of the Public Warning in the SCR. When the Legislature specifies procedures for obtaining judicial review of an agency decision, the appeal of that decision must be taken in compliance with those procedures. *See Grounds v. Tolar Indep. Sch. Dist.*, 707 S.W.2d 889, 891-892 (Tex. 1986) (concluding that a statute's requirement for an appeal to be taken in a particular court meant that "[t]he decision to appeal is optional, but the place of trial is jurisdictional"), *overruled on other grounds by Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (Tex. 2000).

jurisdiction to interpret and apply the Canons. But she claims, as she did before the Commission, that the Public Warning, even if otherwise permitted by the Canons, violates TRFRA and the Constitution.

Hensley is not seeking relief the SCR could afford, nor would the relief it could provide moot or preclude her claims in this case. In an appeal, the SCR could have determined both the correctness of the Public Warning and whether TRFRA or the Free Speech Clause prohibit it. A ruling for Hensley on either ground would have vacated the Public Warning. But that would not have mooted Hensley's TRFRA claim. She still seeks redress for the burden of the Public Warning during the time it was in effect.[64] Chapter 33 of the Government Code does not stay warnings during the pendency of an appeal to the SCR. TRFRA allows Hensley to sue for relief and assert that the Public Warning unduly

---

[64] TRFRA does not necessarily require that a plaintiff file suit while the substantial burden is still in place. *See* TEX. CIV. PRAC. & REM. CODE § 110.007(a) ("A person must bring an action to assert a claim for damages under this chapter not later than one year after the date the person knew or should have known of the substantial burden on the person's free exercise of religion."). However, if the agency that caused the burden alleviates that burden before the burdened party files suit, the aggrieved party may not bring a TRFRA claim. *Id.* § 110.006(c) ("A *government agency* that receives a notice under Subsection (a) may remedy the substantial burden on the person's free exercise of religion." (emphasis added)); *id.* § 110.006(e) ("A person with respect to whom a substantial burden on the person's free exercise of religion has been cured by a remedy implemented under [Section 110.006(c)] may not bring an action under Section 110.005."). Because the SCR—not the Commission itself—would have vacated the Public Warning, the *government agency* that caused Hensley's burden would not have alleviated that burden and Hensley would not be foreclosed from bringing a TRFRA action. *See Keller*, 357 S.W.3d at 431 ("vacat[ing] the Commission's order" and "dismiss[ing] the . . . charging document"); *In re Ginsberg*, 630 S.W.3d 1, 20 (Tex. Spec. Ct. Rev. 2018) ("revers[ing] the Commission's public admonition of the [judge] and dismiss[ing] the charges against him without sanction").

18

burdened the exercise of her religious freedom. The SCR could not have provided her with the relief TRFRA provides, should her TRFRA claim have merit. Vacating the Public Warning could not have mooted her claim.

Moreover, in this action Hensley seeks injunctive relief under TRFRA against the Commission prohibiting future sanctions for repeated actions like those the Public Warning sanctioned. The SCR's reversal of the Public Warning would not prevent the Commission from continuing to sanction Hensley, as it does not bind the Commission to any future course of action or to refrain from infringing on constitutionally protected activity. As a court that reviews the imposition of Commission sanctions in a specific case, the SCR has no power to prospectively bind or otherwise interfere with the Commission's broad discretion to investigate claims, initiate proceedings, and order sanctions and censures. Hensley could have won at the SCR but remained under the threat of future Commission sanctions should she resume use of her referral system. This threat is amplified because justices on the SCR are newly appointed for each case and are not bound by the decisions of previous SCRs.

**D**

Hensley's request for a declaration under the UDJA that the Commission's interpretation of Canon 4A violates the Free Speech Clause is subject to the same exhaustion of remedies rationale as her TRFRA claim. A declaration would prevent the Commission from ignoring Hensley's Free Speech Clause defense in the future should she

reimplement her referral system.[65] As already discussed, a favorable SCR decision vacating the Public Warning would not restrict the Commission from sanctioning Hensley in the future, so the SCR could not have provided Hensley with the relief she seeks. Nor could a favorable SCR decision moot her need for declaratory relief because the prospective threat of future sanctions would remain following vacatur of the Public Warning. Hensley's requested Free Speech Clause declaration under the UDJA is thus not barred by the exhaustion requirement. Another of Hensley's requested declarations—that a judge does not violate Canon 4A by engaging in the same type of religious speech and referral system as Hensley—is also not barred for the same reasons.

Likewise, Hensley's requested declarations that her selective officiating practice does not violate Canon 3B(6) or Article V, Section 1-a(6)(A) of the Texas Constitution are not barred by the exhaustion requirement. The Commission did not sanction Hensley for violating those provisions, and her appeal before the SCR would not have involved those issues. Hensley is not required to appeal to the SCR before seeking declaratory relief in district court for matters completely unrelated to the Public Warning and potential appeal.

In sum, Hensley's requested declarations are not barred by the exhaustion requirement. Hensley's ultra vires claim, which seeks the

---

[65] A declaration under the UDJA "has the force and effect of a final judgment or decree." TEX. CIV. PRAC. & REM. CODE § 37.003(b). Such "judgment or decree will terminate the controversy or remove an uncertainty." *Id.* § 37.003(c). "Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper." *Id.* § 37.011.

same UDJA declaratory relief and TRFRA injunctive relief against the commissioners, is subject to identical treatment.

*   *   *

The SCR could not have finally decided whether Hensley is entitled to the relief sought in this case or awarded the relief TRFRA provides if it is determined that her claim has merit. Nor could the SCR have mooted Hensley's TRFRA claim. Hensley was not required to further exhaust her remedy by appeal to a court that could not afford her the relief TRFRA provides to successful claimants before suing in a court that can.[66]

### III

We turn to the Commission's arguments that Hensley's action is barred by sovereign immunity.[67]

---

[66] TRFRA's prohibition against a government agency substantially burdening a person's exercise of religion expressly "applies to any ordinance, rule, order, decision, practice, or other exercise of governmental authority." TEX. CIV. PRAC. & REM. CODE § 110.002(a). Hensley does not argue, and we need not decide, whether TRFRA thus preempts a requirement of exhaustion of administrative remedies.

[67] It is undisputed that the Commission is a state agency that is entitled to immunity. The State Commission on Judicial Conduct is a constitutionally created agency composed of judges, attorneys, and citizens from the State of Texas. *See* TEX. CONST. art. V, § 1-a(2); TEX. GOV'T CODE § 33.002(a-1) ("The commission is an agency of the judicial branch of state government and administers judicial discipline."). As a state agency, the Commission is entitled to sovereign immunity. *See Miranda*, 133 S.W.3d at 224; *Hagstette*, 2020 WL 7349502, at *4. When a governmental entity challenges jurisdiction on immunity grounds, the plaintiff's burden of affirmatively demonstrating jurisdiction includes establishing a waiver of immunity. *Swanson*, 590 S.W.3d at 550.

## A

TRFRA waives sovereign immunity from suit and liability under the Act.[68] The Commission argues that the waiver does not apply because Hensley failed to give written notice of her claims as TRFRA requires, and therefore the trial court lacks jurisdiction over this action. A person may not sue under TRFRA without giving 60 days' written notice

> (1) that the person's free exercise of religion is substantially burdened by an exercise of the government agency's governmental authority; 2) of the particular act or refusal to act that is burdened; and (3) of the manner in which the exercise of governmental authority burdens the act or refusal to act.[69]

The Commission contends that the notice Hensley gave is deficient for two reasons.

First, Hensley sent her notices to the Commission and its members and officers a few weeks after she received the tentative public warning. The Commission argues that Hensley's religious freedom was not burdened until after the Public Warning, months later, and that she never gave notice that the Public Warning burdened her exercise of religious freedom. But Hensley contends that her protected religious freedom was burdened from the Commission's opening of an investigation months before her notice and has continued till now. The

---

[68] TEX. CIV. PRAC. & REM. CODE § 110.008(a).

[69] *Id.* § 110.006(a).

22

Commission may disagree she has ever been burdened, but the notice she gave certainly provided notice of her claim.[70]

Second, the Commission argues that Hensley's presuit notice "merely implied that [she] had been required to suspend her opposite-sex wedding ceremonies due to the [Commission's] 'investigation' and 'threatened penalties.'" Such notice, the Commission contends, fails to properly state the *manner* in which the exercise of governmental authority burdens the act or refusal to act as required by TRFRA Section 110.006(a)(3). Hensley's presuit notice, sent by her lawyer to each Commissioner via letter, stated:

> I represent Justice of the Peace Dianne Hensley. I write to inform you that the Commission's investigation of Judge Hensley, and its threatened discipline of Judge Hensley for refusing to perform same-sex weddings, substantially burdens her free exercise of religion. *See* Tex. Civ. Prac. & Rem. Code § 110.006(a)(1).
>
> The Texas Religious Freedom Restoration Act protects a "refusal to act that is substantially motivated by sincere religious belief." Tex. Civ. Prac. & Rem. Code §§ 110.001(1). . . .
>
> The Commission's investigation of Judge Hensley and its threatened penalties are imposing substantial burdens on Judge Hensley for her refusal to perform same-sex weddings in violation of her Christian faith. *See* Tex. Civ. Prac. & Rem. Code § 110.006(a)(2)-(3).

---

[70] *See Barr v. City of Sinton*, 295 S.W.3d 287 (Tex. 2009) (holding that an ordinance passed to ban halfway houses operated as part of a religious ministry burdened religious freedom from the moment it was passed, even though it was never enforced).

23

The Commission does not dispute that Hensley's religious beliefs are sincere. Her notice clearly states that they were burdened by the Commission's threatened sanction against her for refusing to perform same-sex marriages.

Hensley's notice of the burden she claims to her religious freedom is clearly sufficient under TRFRA.[71]

## B

The Commission argues that TRFRA's general waiver of sovereign immunity does not extend to the "immunity from liability" granted the Commission and commissioners under Section 33.006 of the Texas Government Code, which "is absolute and unqualified and extends to any action at law or in equity."[72]

---

[71] The court of appeals held that TRFRA does not waive the Commission's immunity because Hensley has not shown that she has a "successful" claim. 683 S.W.3d at 161. But Hensley need not prove her claim for immunity to be waived. The district court would lack jurisdiction over Hensley's action if she failed to plead facts supporting claims for which immunity is waived. *See Miranda*, 133 S.W.3d at 226. The Commission has not asserted that the facts Hensley alleges in her pleadings are insufficient to support her claims.

We have indicated that TRFRA's presuit notice requirement is not jurisdictional. In *Barr*, we acknowledged the trial court's finding of a "fail[ure] to give notice as required by [TRFRA]", but we did not engage in sua sponte review of our jurisdiction as we must whenever our jurisdiction is uncertain, and we concluded that plaintiffs were entitled to relief. 295 S.W.3d at 292 n.8, 308; *see also Morgan v. Plano Indep. Sch. Dist.*, 724 F.3d 579, 591 (5th Cir. 2013) (Elrod, J., dissenting) (concluding that the Texas Supreme Court does not consider a plaintiff's failure to provide proper notice under TRFRA to be a jurisdictional defect). *But see State v. Valerie Saxion, Inc.*, 450 S.W.3d 602, 615 n.11 (Tex. App.—Fort Worth 2014, no pet.) (citing the *Morgan* majority's proposition that "[T]RFRA's pre-suit notice requirement is jurisdictional").

[72] TEX. GOV'T CODE § 33.006(c).

Section 33.006(b) expressly provides only an immunity from liability, not an immunity from suit.[73] "[I]mmunity from liability does not affect a court's jurisdiction to hear a case and cannot be raised in a plea to the jurisdiction."[74] The trial court thus erred in relying on the immunity provided by Section 33.006 as a basis for concluding that it lacked jurisdiction over the Commission and commissioners.[75]

## C

The lower courts concluded that Hensley's request for a declaration against the Commission (not the commissioners) that Canon 4A violates the Free Speech Clause is barred by sovereign immunity.[76]

The UDJA provides that "[a] person . . . whose rights . . . are affected by a statute . . . or municipal ordinance . . . may have determined any question of construction or validity . . . and obtain a declaration of rights . . . thereunder."[77] Hensley argues that this provision waives the Commission's sovereign immunity from her claim.

---

[73] *See Tarrant County v. Bonner*, 574 S.W.3d 893, 900 (Tex. 2019) ("Immunity from liability and immunity from suit are distinct aspects of governmental immunity under common law. Immunity from liability protects governmental entities from judgments; immunity from suit protects those entities from the burdens of litigation altogether, absent legislative consent." (citations omitted)).

[74] *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003).

[75] The parties also dispute the relationship between Section 33.006 and the express waiver of sovereign immunity in TRFRA Section 110.008. We express no opinion on the matter in this case.

[76] Hensley made other requests for declaratory relief against the Commission in the trial court that she has abandoned on appeal.

[77] TEX. CIV. PRAC. & REM. CODE § 37.004(a).

But Canon 4A is neither an ordinance nor a statute but a rule promulgated by this Court. Thus, the UDJA waiver does not apply.

Hensley also argues that the Commission's sovereign immunity from her claim is waived by the Texas Administrative Procedure Act, which provides that "[t]he validity or applicability of a rule . . . may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff."[78] A "rule" is defined as "a state agency statement of general applicability".[79] The definition of "state agency" expressly excludes courts.[80] Canon 4A is not a rule promulgated by a state agency.

The lower courts correctly concluded that the Commission's sovereign immunity is not waived for Hensley's request for a declaration regarding Canon 4A.

## D

The lower courts dismissed Hensley's declaratory requests against the commissioners under both the UDJA and TRFRA on the grounds that the commissioners' sovereign immunity was not waived. Hensley argues that the commissioners acted ultra vires because "unlawful acts of officials are not acts of the State"[81] and the commissioners have no discretion to violate TRFRA by determining that

---

[78] TEX. GOV'T CODE § 2001.038(a).

[79] *Id.* § 2001.003(6).

[80] *Id.* § 2001.003(7)(c).

[81] *Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 76 (Tex. 2015).

it does not apply here. The Commission responds that in investigating Hensley and ultimately issuing the Public Warning, the commissioners were performing their duties precisely as authorized by the Commission's enabling laws. Even if the commissioners erred in exercising their discretion, they contend, any alleged error does not constitute an ultra vires act because the error occurred while acting within the zone of their authority.

Not all acts of a government official misinterpreting and misapplying a law are ultra vires. Sovereign immunity bars suits complaining of legal errors stemming from the exercise of the officer's *absolute* discretion but not suits complaining of those errors stemming from an officer's exercise of *limited* discretion.[82] Acts within an officer's absolute discretion are those where the officer exercises "free decision-making without any constraints", while acts within the officer's limited discretion are those where the officer must exercise "discretion that is otherwise constrained by the principles of law."[83]

Hensley alleges that the commissioners' decision to warn her violated her statutorily protected constitutional right to free exercise. We have noted that questions of law that determine the constitutionality of an agency's decision fall "outside the competence of administrative agencies" because "the power of constitutional construction is inherent in, and exclusive to, the judiciary."[84] Though the Commission does have

---

[82] *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 163 (Tex. 2016).

[83] *Id.*

[84] *Stewart*, 361 S.W.3d at 578-579.

27

the discretion to issue informal warnings,[85] the commissioners' discretion to issue a warning *over a TRFRA defense* is necessarily of the *limited* sort because the Commission does not have absolute discretion to interpret and apply TRFRA. Because the commissioners' discretion in interpreting and applying TRFRA is limited, a claim that alleges that the Public Warning violated TRFRA is a sufficient ultra vires allegation to survive a plea to the jurisdiction.

*    *    *    *    *

We affirm the part of the court of appeals' judgment dismissing Hensley's requested declaratory relief against the Commission concerning the Free Speech Clause for lack of jurisdiction, reverse the remainder of the judgment, and remand to the court of appeals for consideration of the unaddressed issues remaining on appeal.

Nathan L. Hecht
Chief Justice

**OPINION DELIVERED:** June 28, 2024

---

[85] TEX. CONST. art. V, § 1-a(8).